IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DIANN L. JEFFRIES,**        )<br>                              )<br>     Plaintiff,              )<br>                              )<br>vs.                           )<br>                              )<br>**MICHAEL J. ASTRUE,**          )<br>**COMMISSIONER OF SOCIAL**      )<br>**SECURITY**                    )<br>**ADMINISTRATION,**             )<br>                              )<br>     Defendant.              ) | Civil Action Number<br>**2:12-cv-67-AKK** |

## MEMORANDUM OPINION

Plaintiff Diann L. Jeffries ("Jeffries") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision - which has become the decision of the Commissioner - is supported by substantial evidence and, therefore, **AFFIRMS** the decision denying benefits.

### I. Procedural History

Jeffries filed her application for Title II disability insurance benefits on June

10, 2009, alleging a disability onset date of April 16, 2008, due to diabetes, glaucoma, heart problems, chest pain, numbness in her feet and legs, hypertension, high cholesterol, and nausea. (R. 133, 158). After the SSA denied her application on March 12, 2010, Jeffries requested a hearing. (R. 73, 80). At the time of the hearing on April 5, 2011, Jeffries was 58 years old, had a high school diploma and a practical nurse license, and past relevant medium, skilled work as a licensed practical nurse, sedentary, skilled work as a resident companion coordinator and staff development coordinator, and light, skilled work as a director of an assisted living facility. (R. 41, 64-65). Jeffries has not engaged in substantial gainful activity since April 16, 2008. (R. 43).

The ALJ denied Jeffries's claim on September 29, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on July 18, 2011. (R. 1-6, 14). Jeffries then filed this action pursuant to section 1631 of the Act, 42 U.S.C. § 1383(c)(3). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988);

*Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III. Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

   (1)   whether the claimant is currently unemployed;

   (2)   whether the claimant has a severe impairment;

   (3)   whether the impairment meets or equals one listed by the Secretary;

   (4)   whether the claimant is unable to perform his or her past work; and

   (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the Five Step sequential analysis, the ALJ initially determined that Jeffries had not engaged in substantial gainful activity since her alleged onset date and therefore met Step One.  (R. 21).  Next, the ALJ acknowledged that Jeffries's severe impairments of coronary artery disease, diabetes mellitus, obesity, and glaucoma met Step Two.  *Id*.  The ALJ then proceeded to the next step and found that Jeffries did not satisfy Step Three since she "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments."  (R. 22).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where he determined that Jeffries

> has the residual functional capacity [RFC] to perform sedentary[1] work

---

[1]Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  By its very nature, work performed primarily in a seated position entails no significant stooping.  Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger

> [ ] except she can occasionally climb stairs and ramps, but never ladders, ropes or scaffolds. She can frequently balance and stoop, occasionally kneel but never crouch, or crawl. She should avoid concentrated exposure to extreme heat or humidity and hazardous conditions such as heights and moving machinery. The claimant is limited to frequent near visual acuity, depth perception and accommodation.

(R. 24). In light of Jeffries's RFC, the ALJ determined that Jeffries was "capable of performing past relevant work as a staff development coordinator and resident companion coordinator" because the "work does not require the performance of work-related activities precluded by the claimant's [RFC]." (R. 30). Because the ALJ answered Step Four in the negative, consistent with the law, the ALJ found that Jeffries was not disabled. *Id*.; *see also McDaniel*, 800 F.2d at 1030.

## V. Analysis

Jeffries asserts that the ALJ erred because she failed to (1) properly consider whether Jeffries would be found disabled using the Grids, (2) consider Jeffries's "moderate mental work related limitations" in combination with other conditions "which may result in impaired concentration, and ability to deal with work stresses and successfully interact in a work setting," (3) provide authority for her determination that limiting Jeffries to close up work for 2/3 of her day "would accommodate for her difficulties in near acuity and depth perception," (4)

---

actions." SSR 83-10 1983 WL 31251 at *5.

adequately consider all of Jeffries's medications and the potential side effects, and (5) seek a medical expert's opinion regarding treating physician Dr. Elizabeth Stahl's physical capacity evaluation and Jeffries's obesity.  Doc. 6 at 6-10.  For the reasons stated below, the court finds that the ALJ's opinion is supported by substantial evidence.

*A.  The ALJ did not err in failing to consider the Medical Vocational Guidelines*

Jeffries contends that the ALJ erred by failing to find her disabled under the Medical Vocational Guidelines—§ 201.06 (GRID Table 2).  Doc. 6 at 6.  More specifically, Jeffries asserts that she

> was in fact well over fifty and even over fifty five, and thus of advanced age at onset.  Limited to unskilled work, even with an ability to perform a full range of sedentary work Ms. Jeffries would readily 'GRID' under Medical Vocational Rule 201.06.

*Id.*  The court disagrees.  The GRID is used "where a person is not doing substantial gainful activity <u>and is prevented by a severe medically determinable impairment from doing vocationally relevant past work</u>."  20 C.F.R. § 404.1569; *see also Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987).  Put differently, the GRID is inappropriate here because the ALJ determined that Jeffries can return to her past relevant work as a staff development coordinator and resident companion coordinator.  (R. 30).  As such, the ALJ committed no error in failing

to consider the GRID.

B.     *Mental impairments*

Jeffries contends next that although "there are no formal diagnoses of anxiety or depression in the record," the "ALJ's exclusion of any mental impairments from her findings of threshold severe impairments did not obviate the need to further consider this issue from the standpoint of other conditions or circumstances that would limit mental functioning." Doc. 6 at 6. Jeffries supports this assertion by citing to her disability report and testimony where she states that she is "unable to focus on [her] work," is "tired all the time," has "become depressed since [she] can't function on a job any longer," and suffers from depression and anxiety because she can "not do the things she used to do." (R. 61, 158); doc. 6 at 7. Unfortunately for Jeffries, this argument is unpersuasive, in part, because the evidence reveals that although Jeffries reported that she had problems with depression and focusing, non-examining physician Dr. Robert Estock performed a psychiatric review technique on February 24, 2010, and reported that Jeffries had problems concentrating due to her pain and problems with stress due to her heart problems, but that Jeffries "has no other mental problems. . . . The [claimant] states that no mental [disorder] was affecting her ability to work." (R. 366). Moreover, Jeffries's own testimony undermines her contention about her

purported mental impairments further:

> Jeffries	The anxiety, the depression, and then not having to be able to do what I used to do. An that's just another phase I guess in my life. I can't do it.
>
> * * * *
>
> Am I doing what I did - - I did and I can't do it anymore? There's a lot of things that I can't do anymore, so I'm just trying to deal with that. I won't go on any medication, I won't - - I just won't be able to deal with that.
>
> ALJ	So you're talking about you don't want to deal with more medication regards to anxiety or depression, taking some kind of medication for that?
>
> Jeffries	Yes. Because - - because as soon as you - - and I guess by being a nurse, as soon as you share, you know, with your physicians what you want, you know, they think a pill will help.
>
> ALJ	Right.
>
> Jeffries	You know? I take enough. I take enough.
>
> ALJ	Have you gone to any kind of counseling or talked to a pastor or anything like that?
>
> Jeffries	Well, not in - - not in that sense, no. I have a very supportive church, but I haven't, you know. I go to church and I go to Sunday school. But that's about the extent of my socializing.

(R. 61-62).

Based on the evidence, the ALJ determined that although Jeffries alleged depression and anxiety because she was unable to do things she used to do,

> she could not identify any specific symptoms or limitations related to depression and anxiety. She also admitted that she has never felt the need to tell any of her doctors that she was depressed or anxious. She further admitted that she never felt the need [to] seek mental health treatment and was not interested in taking any more medications than she was already taking. The undersigned notes that the claimant's testimony is contradictory to information she provided at the initial level of her claim at which time she stated that no mental disorder was affecting her ability to work. (Exhibit 9f) [Dr. Estock's assessment]. There are simply no medical signs or laboratory findings to support a diagnosis of anxiety or depression. Therefore, the undersigned finds these to be non-medically determinable impairments.

(R. 22). The court notes that Jeffries declined to seek any treatment for her anxiety and depression and, therefore, there is no evidence in the record to support her contention. Moreover, the regulations requires that a claimant's "impairment must result from [ ] psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques," 20 C.F.R. § 404.1527(a), and Jeffries has failed to meet her burden to prove that her depression and anxiety are disabling or warranted further consideration by the ALJ. Therefore, the ALJ's decision to find Jeffries's depression and anxiety non-medically determinable impairments is supported by substantial evidence.

C.    *Glaucoma-related limitations*

The full extent of Jeffries's contention about her glaucoma is that the "ALJ provided no medical authority for her determination that limiting Plaintiff to 'only'

2/3 (or 6 hours) of the day pursuant to SSR 83-10 for close up work would accommodate for her difficulties in near acuity and depth perception." Docs. 6 at 8; (R. 28). A review of the glaucoma-related medical evidence shows that Jeffries obtained the diagnosis when she visited Dr. Susan Eiland in April 2007 because she was "unable to focus" and had blurred vision. (R. 331). Dr. Eiland diagnosed Jeffries with glaucoma, dry eyes, macula hemorrhage, and high blood pressure. *Id*. Jeffries returned on August 30, 2007, during which Dr. Eiland noted that Jeffries's vision was "doing okay" and instructed Jeffries to continue her medications. (R. 330).

Thereafter, Jeffries visited Dr. Eiland in June 2008, September 2008, and January 2009, during which Dr. Eiland noted Jeffries's diagnoses and instructed Jeffries to continue with the medications. (R. 327-330). The next visit occurred in June 2009, during which Dr. Eiland noted that Jeffries was "stable," had a "good" systolic blood pressure of 143, and diagnosed Jeffries with glaucoma, cataracts, and macular hemorrhage. (R. 326). For the next three visits thereafter, Dr. Eiland's progress notes remained substantially the same except that Dr. Eiland noted that Jeffries's vision was 20/30+1 and 20/25, 20/40 and 20/30, and 20/20-1 and 20/20-2. (R. 323, 325). The final visit in the record occurred in January 2011, when Jeffries reported feeling "like she ha[d] something along her lashline." (R.

402).  Dr. Eiland noted that Jeffries is not "using any tears or noticing trouble [with] dryness" and that Jeffries's vision was 20/30+2 and 20/25-1.  (R. 402).  Dr. Eiland diagnosed Jeffries with glaucoma and dry eyes.  *Id*.

> Based on the medical evidence, the ALJ found that Jeffries's
>
> eye examinations do not show any significant limitation and she has good remaining corrected vision.  The claimant's medical records establish a history of continued treatment by Susan Eiland, M.D.  Dr. Eiland's records through January 2011 have shown the claimant's glaucoma to be stable on medication with her most recent vision exam showing vision correctable to 20/25-1 and 20/30+2.  (Exhibits 6F and 15F)  However, at the hearing, the claimant alleged that she could not drive at night and experienced eye fatigue with reading more than 30 minutes and using a computer more than one.  Considering those allegations, the claimant's residual functional capacity limits her to only frequent (2/3 or less of the day) near acuity, depth perception and accommodation.  These additional visual limitations allow time for periods in which the claimant would not be required to use her eyes for such close-up work.  However, the treatment records do not show that her vision would be more limited than that or that she has any deficits in far acuity, color vision, or field of vision.

(R. 28).  This finding is supported by the record.  Specifically, Dr. Eiland's treatment notes reveal that the glaucoma is treated effectively with medication and that Jeffries's vision is within the normal range.  Furthermore, in limiting Jeffries's RFC, the ALJ accepted Jeffries's subjective complaints that she experienced problems with night driving and eye fatigue even though Dr. Eiland's progress notes failed to support these complaints.  Therefore, the court finds that the ALJ

substantiated her findings regarding Jeffries's ophthalmological limitations and the ALJ's decision is supported by substantial evidence.

D.   *The ALJ did not err in the weight she assigned to Dr. Elizabeth Stahl's opinion*

Jeffries contends next that the ALJ erred in failing to seek a medical expert's opinion "on the areas of Dr. Stahl's Physical Capacity Evaluation to which she gave no weight selecting only the portions that would support her RFC findings but rejecting others." Doc. 6 at 10. Dr. Stahl started treating Jeffries in June 2007 for hyperlipidemia, hypertension, and diabetes. (R. 297). Dr. Stahl reported that Jeffries had a negative CT scan, that her glucose levels "will be elevated again, but should improve shortly," and instructed Jeffries to continue her medications. (R. 297). Jeffries visited Dr. Stahl thereafter in September 2007, and January, March, and June 2008, and the treatment notes remained primarily the same, except for some changes in medication and Jeffries's participation in several weight loss programs. (R. 282, 285, 287, 290, 293, 295). When Jeffries returned to Dr. Stahl in March 2009, Dr. Stahl reported that Jeffries had "increasing [chest pain] with exertion and emotion," had "another cardiac cath that was negative," but that Jeffries's chest pain was "better although she cannot say why." (R. 269). Consequently, Dr. Stahl instructed Jeffries to continue her medications and return in four months. (R. 270). The next visit in 2009 occurred in October, during

which Jeffries conveyed that she walked with her husband in the morning, and no longer had headaches. (R. 226).

Eight months later, in June 2010, Dr. Stahl completed a physical capacities evaluation in which she opined that Jeffries can (1) lift or carry ten pounds, (2) sit for seven hours and stand for one hour in an eight hour day, (3) frequently use fine manipulation, (4) occasionally push and pull arm or leg controls, climb, balance, use gross manipulation, bend, stoop, and reach, (5) operate a motor vehicle, and (6) work around hazardous machinery, dust, allergens, and fumes. (R. 376). Dr. Stahl added that Jeffries's pain does not prevent everyday activities or work, that physical activity greatly increased Jeffries's pain to such a degree to cause distraction from or total abandonment of tasks, and that Jeffries has an underlying medical condition consistent with the pain she experiences. (R. 377-78). Dr. Stahl declined to answer whether prescribed medication side effects would impact Jeffries's ability to perform work because "the cardiologist prescribed med[ication] that she thinks is causing side effects." (R. 378).

Jeffries's final visit to Dr. Stahl occurred on December 6, 2010, during which Dr. Stahl noted that Jeffries had high glucose levels, changed Jeffries's drug regimen accordingly, and discussed weight loss surgery. (R. 383). Dr. Stahl noted also that Jeffries's chest pain "has been a long standing problem. [Graded exercise

test] negative recently. [Heart] Cath[eter] neg last year." *Id*.

    After reviewing Dr. Stahl's medical notes, the ALJ determined that

> Dr. Stahl's opinion that the claimant was basically limited to sedentary work with additional limitations in her ability to climb and push/pull is generally consistent with her treatment records and supported by the evidence as a whole. Great weight has been placed in this portion of Dr. Stahl's opinion. However, her opinion that the claimant has additional manipulative and postural restrictions simply is not consistent with, or supported by, her own treatment notes or the evidence as a whole. The claimant has not been diagnosed with any impairment that would significantly affect her ability to grasp, twist, handle, finger, reach, balance or stoop. Therefore, little weight has been placed in this portion of Dr. Stahl's opinion. While the undersigned did not include a specific restriction in the claimant's RFC regarding her ability to push/pull (as Dr. Stahl did); the undersigned notes that, by definition, an occupation that requires pushing/pulling is considered light in exertion. Also, Dr. Sthal also indicated that the claimant had pain that did not prevent functioning, but which increased with physical activity. The only pain alleged by the claimant is chest pain that is primarily related to physical exertion and would not preclude work at the sedentary level. While Dr. Stahl's opinion has not been given controlling or even full weight, her opinion overall supports the undersigned's finding that the claimant is capable of performing work at a restricted range of sedentary.

(R. 29-30). Jeffries challenges the ALJ's decision to only assign little weight to a portion of Dr. Stahl's opinion. Doc. 6 at 10. Based on this court's review of the evidence, the ALJ's decision is supported by substantial evidence.

    The regulations provide that the Commissioner will give treating physicians "controlling weight" when their opinions are supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence." 20 C.F.R. § 404.1527(c)(2).  However, Dr. Stahl's opinion that Jeffries can only occasionally push and pull arm or leg controls, climb, balance, use gross manipulation, bend, stoop, and reach is not supported by the record evidence or Dr. Stahl's treatment notes.  In fact, Dr. Stahl reported that Jeffries experienced only chest pain of unknown origin, which would not prevent Jeffries from the postural limitations outlined by Dr. Stahl.  Therefore, the ALJ's decision to give a portion of Dr. Stahl's opinion "little weight" is supported by substantial evidence.  20 C.F.R. § 404.1527(c)(2) and (4); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Significantly, as the ALJ acknowledged, in all other respects, Dr. Stahl's opinion is consistent with the ALJ's finding that Jeffries can perform sedentary work.

*D.  The ALJ properly determined that Jeffries's statements are not credible*

Jeffries contends that the ALJ erred because she "provided no rationale for not accepting Plaintiff's testimony" regarding her medications and in "all other areas."  Doc. 6 at 9.  Specifically, Jeffries claims that the "ALJ mentioned only three medications in her decision – Plavix, Glucophage and Symlin and inferentially two injections for diabetes mellitus and a diuretic and eye drops, but reporting Plaintiff's testimony that she took multiple medications," although in March 2011 Jeffries "was taking ten medications including the above and Avalide,

aspirin, Pravachol and Toprol." *Id*. at 8-9.  Jeffries's contentions miss the mark because although the ALJ only mentioned Plavix, Glucophage, Symlin, eye drops, diuretic, and diabetes injections, the ALJ referred to Jeffries's medications repeatedly in her opinion:  (1) "[s]he stated that she [ ] took [ ] an oral medication for diabetes," (2) "one of her medications made her nauseous," (3) "[s]he reported that other medications caused muscle pain and spasm, loss of concentration and ability to think, diarrhea, fatigue, blurry vision and heartburn," (4) "[s]he stated that she took multiple medications," (5) "she stated one of her medications from glaucoma also had a side effect of chest pain," and (6) "a recent change in medication had reduced her glucose to the 200 range."  (R. 24-26).  In other words, the ALJ's opinion belies Jeffries's contention.

> Regarding Jeffries's credibility, the ALJ considered
>
> the type, dosage, effectiveness, and adverse side effects of any medication; as well as any treatment, other than medication, for relief of the alleged symptoms and any measures used to relieve pain or other symptoms.  As discussed herein, the claimant's medications are helpful in controlling her impairments.  While she alleged medication side effects in the past, she testified that her present medications do not bother her except for possibly contributing to her chest pain. She did not report receiving any other forms of treatment and the only other measure indicated was that, if she had chest pain, she stopped walking or doing whatever activity she was engaged in.

(R. 28).  This finding is consistent with the record because when the ALJ asked Jeffries if "any of those medications cause any problems or side effects just in the

medicines themselves," Jeffries answered,

> No.  The Plavix, one of the side effects, I tried to do some research to try to find what's causing the chest pains. . . .   And Plavix's side effects, chest pain from Plavix – how do I say it?  Side - - the chest pain is one of the side effects to that. . . . And then I also take the two eye drops, and one of them, I don't remember which one, one of the side[ ] effects is chest pain.

(R. 47).  In light of Jeffries's testimony, this court finds no error in the ALJ's decision.  Further, although Jeffries failed to cite any specific issue regarding the ALJ's credibility finding, based on the record evidence, the ALJ did not err in finding that Jeffries's statements concerning her symptoms are not credible.  As previously stated, even Jeffries's treating physician Dr. Stahl opined that Jeffries's conditions did not prevent her from engaging in work activity.  (R. 377-78).

*E.  The ALJ did not err in failing to seek a medical expert's opinion*

      Finally, Jeffries asserts that the ALJ erred by failing to obtain a medical expert opinion regarding (1) Dr. Stahl's inability to answer the question regarding Jeffries's medication side effects, and (2) the side effects of obesity.  Doc. 6 at 9-10.  However, the ALJ is not required to order additional medical opinions when, as here, the record contains sufficient evidence for the ALJ to make a disability determination.  *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted).  Again, Jeffries testified that the only side effects she experienced were chest pains caused by Plavix and her eye drops.  (R. 47).

Therefore, no reason existed for the ALJ to further clarify the record regarding Jeffries's side effects through a medical expert.

Likewise, Jeffries's contention that the ALJ failed to "solicit a [medical expert] on the effects of obesity" is unpersuasive. Doc. 6 at 10. The ALJ considered Jeffries's obesity "in accordance with SSR 02-1p," which outlines how the Commissioner considers obesity in the Five Step sequential process. (R. 27). In light of the evidence, the ALJ found that Jeffries was "fairly credible" regarding the difficulties in performing work duties at her previous job at the medium exertion level, but that the "evidence simply does not show that she is incapable of performing all work activity. Indeed, nothing in the record contraindicates an inability to perform sedentary work." (R. 28). In fact, the evidence indicates otherwise since Jeffries can drive, attend church and Sunday school, walk with her husband, "surf the net," shop, cook, read, watch television, and care for her personal needs. (R. 28-29, 195, 196, 213). Ultimately, Jeffries must meet her burden of proving that she is disabled. *See* 20 C.F.R. § 416.912(c). Notwithstanding Jeffries's unsubstantiated assertions to the contrary, the record evidence simply does not support her disability claim. Critically, Jeffries failed to articulate why additional medical evidence is warranted to evaluate her claim. Moreover, the ALJ's finding that Jeffries has an RFC for sedentary work is

consistent with the record as a whole.  Therefore, the ALJ's decision is supported by substantial evidence.

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Jeffries is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is **AFFIRMED**.  A separate order in accordance with the memorandum of decision will be entered.

Done the 9th day of November, 2012.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE